UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-20886-BLOOM/Otazo-Reyes

LASHUNDA HOWARD,

    Plaintiff,

v.

GUCCI AMERICA, INC.,

    Defendant.
_____/

**ORDER ON MOTION TO DISMISS**

**THIS CAUSE** is before the Court upon Defendant Gucci America, Inc.'s ("Gucci") Motion to Dismiss, ECF No. [11] ("Motion"), filed on April 4, 2023. Plaintiff Lashunda Howard ("Howard") filed a Response, ECF No. [17], to which Gucci filed a Reply, ECF No. [21]. The Court has carefully reviewed the Motion, the Response, the Reply, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

    **I.**    **INTRODUCTION**

On March 3, 2023, Howard initiated this case with the filing of her Complaint. ECF No. [1]. Therein, she alleges the following:

On or about October 8, 2022, Howard entered a Gucci store in Aventura, Florida, to return shoes that been purchased online.[1] *Id*. ¶¶ 11, 16. Howard, who is African American, was directed to the Gucci store's manager, whom Howard names as "Dawn," who is White. *Id.* ¶ 17. Dawn took possession of the shoes but refused to issue Howard a refund, explaining that Gucci's refund policy

---

[1] The Complaint does not specify who purchased the shoes online.

for online purchases was of a shorter duration than for in-store purchases, and that Howard could exchange the shoes instead. *Id.* ¶ 19. Dawn refused to offer Howard a refund, maintained possession of the shoes, and called the police. *Id.* ¶¶ 22, 25. During Dawn's call to the police, Dawn "used racial tropes and stereotypical racial denotations regarding Ms. Howard[.]" *Id.* ¶ 32. When the police arrived, they instructed Dawn to return the shoes to Howard, which she did. *Id.* ¶ 38. Howard claims that Dawn's racial animus against her was the reason that Dawn refused to give Howard a refund or return the shoes. *Id.* ¶ 47.

Based on the foregoing allegations, Howard asserts three claims against Gucci: violation of 42 U.S.C. § 1982 (Count I), violation of 42 U.S.C. § 1981 (Count II), and a state law claim of conversion (Count III). *See generally* ECF No. [1].

Gucci moves to dismiss all three Counts. *See generally* ECF No. [11]. Gucci argues that Howard's § 1981 claim fails because Howard has failed to identify a specific contractual right that Gucci impaired, *id.* at 7, and she has failed to allege facts that would show that Gucci discriminated against her on the basis of her race, *id.* at 13. Gucci additionally argues that Howard's § 1982 claim suffers from the same deficiencies as the § 1981 claim. *Id.* at 16. Finally, Gucci asserts that Howard has failed to allege a necessary element of a claim for conversion – that the defendant deprived Howard of her property permanently or for an indefinite time. *Id.* at 16. Gucci concludes that all three of Howard's claims should be dismissed with prejudice, because amendment would be futile. *Id.* at 19.

Howard responds that her § 1981 claim states a claim for relief because Howard was denied her contractual right to a refund for her shoes. ECF No. [17] at 12. Howard asserts that § 1981 claims are distinct from § 1982 claims because § 1981 claims have fewer elements that must be

met. *Id*. at 13. Lastly, Howard argues that Gucci's conversion was complete because Dawn held the shoes for an indefinite period of time. ECF No. [17] at 18.

## II.   LEGAL STANDARD

A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court must accept the plaintiff's allegations as true and evaluate all possible inferences derived from those facts in favor of the plaintiff. *See Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, 418 F. Supp. 3d 1075, 1079 (S.D. Fla. 2019).

## III.   DISCUSSION

The Court addresses Gucci's arguments in the order they appear within Gucci's Motion.

### A.   Count II: 42 U.S.C. § 1981

In Count II, Howard asserts a violation of her rights under 42 U.S.C. § 1981, which "prohibits racial discrimination in the making and enforcement of private contracts." *Runyon v. McCrary*, 427 U.S. 160, 168 (1976) (citations omitted). To state a claim under § 1981, a plaintiff

must allege facts demonstrating: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute[.]" *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (quoting *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)). Those activities include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Here, Gucci concedes that the first § 1981 element is satisfied by Howard's allegation that she is African American. ECF No. [11] at 6. Gucci focuses on the third § 1981 element, which, in this context, requires Howard to "identify an impaired 'contractual relationship' under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006) (internal citation omitted). Gucci argues that Count II of Howard's Complaint fails to identify any such contract.

In her Response, Howard explains that the contract at issue was her "original contract at purchase," which "included the future right to return, refund," or "exchange" the shoes. ECF No. [17] at 9. She argues that she was denied her rights under that contract when Dawn took her shoes without allowing her to refund them. *Id*. at 10.

In its Reply, Gucci accurately points out that Howard's Complaint lacks the theory that Howard espouses in her Response. ECF No. [21] at 3. The following sentence is the closest Count II comes to identifying a contractual relation:

> A contractual relationship was formed between Plaintiff and Defendant upon Defendant's offer to sale Plaintiff' merchandise and Plaintiff's acceptance of that offer by purchasing merchandise and as a citizen in general, and Plaintiff's acceptance of that offer to spend money in Defendant's establishment and Defendant's acceptance of Plaintiff's money.

ECF No. [1] ¶ 65. This statement is inconsistent with the Complaint's allegations. According to those allegations, Howard did not "spend money" or attempt to spend money at the physical Gucci store. *Id*. The clause "as a citizen in general" adds confusion because it implies that Gucci entered into a contractual relationship with Howard automatically through Howard's citizenship status.

Presumably, Howard is referring to a prior purchase of the shoes online, for which she possesses a receipt. *Id.* ¶ 16. However, the Complaint does not specify that it was Howard who purchased those shoes online or that the online purchase included a right to refund the shoes at a physical Gucci store. Upon a review of Count II and the 56 paragraphs of general allegations, there are no allegations that Howard actually held a contractual right to receive a refund for the shoes. Thus, the Court agrees with Gucci that Count II is deficient for failing to identify a contractual relationship that was impaired.[2] *See Domino's Pizza*, 546 U.S. at 476.

The question is whether the Court should grant Plaintiff leave to amend her claim. Though this Count's deficiencies are significant, the Court is not entirely convinced that amendment would be "futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). Accordingly, Count II is dismissed with leave to amend. In her Amended Complaint, Howard shall attach the contract or policy that afforded her the right to receive a refund from the Defendant for her shoes.

### B. Count I: 42 U.S.C. § 1982

Turning to Howard's § 1982 claim, Gucci's primary argument is that § 1981 and § 1982 claims are construed *in pari materia*, so Howard's failure to state a § 1981 claim likewise dooms her § 1982 claim. ECF No. [11] at 16. Howard responds that § 1982 is distinct from § 1981 in that § 1982 protects the use of property as opposed to contractual relations. ECF No. [17] at 13.

---

[2] Given this conclusion, it necessarily follows that Howard has additionally failed to allege that racial discrimination was the cause of the impairment of her contractual relationship.

Section 1982 is "similar to § 1981 except that it focuse[s], not upon rights to make and to enforce contracts, but rights related to the ownership of property." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). Section 1982 states in full: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

As those statements of law reflect, Gucci's primary argument is flawed. While it is true that § 1981 and § 1982 are construed *in pari materia*, the two causes of action are not identical. Thus, Gucci is incorrect that the deficiencies of Howard's § 1981 claim necessarily doom her § 1982 claim. "The elements of a Section 1982 claim parallel those required to state a Section 1981 claim – i.e., a plaintiff must adequately allege the same first two elements, as well as interference with the rights or benefits connected with the ownership of property." *Prestige Restaurants & Entm't, Inc. v. Bayside Seafood Rest., Inc.*, 09-cv-23128, 2010 WL 680905, at *7 (S.D. Fla. Feb. 23, 2010) (quotation marks omitted), *aff'd*, 417 Fed. App'x. 892 (11th Cir. 2011).

However, the Complaint fails to adequately allege the third element – "interference with the rights or benefits connected with the ownership of property." *Id*. Count I of the Complaint alleges that Gucci violated § 1982 by:

> failing to provide Plaintiff and other minorities with the full and equal enjoyment of the goods, services, privileges, advantages of refunding or choosing not to purchase or exchange property in its store, by discriminating against Plaintiff and other minorities by arbitrarily, capriciously and without reason failing to service Plaintiff and other minorities equally and with the equal respect as white customers based on their race.

ECF No. [1] ¶ 59. This statement is hard to decipher as it is full of extraneous and imprecise verbiage that simply repeats legal standards, some of which have no application to asserted causes of action. The plain language of § 1982 does not appear to protect Howard's enjoyment of "services." Moreover, the Complaint plainly alleges that Howard *did* receive service at the store,

6

including the opportunity to "exchange" the shoes. Overall, the surplusage and lack of specificity within this allegation forces Gucci and the Court to guess what constitutes the basis for Howard's § 1982 claim.

Howard's Count I contains one more relevant allegation:

> As direct and proximate result of Defendant's discriminatory practices, which affected Plaintiff's rights to refund personal property, hold and convey her personal property and received equal service afforded to white customers Plaintiff has sustained damages.

*Id.* ¶ 61. That allegation somewhat clarifies Plaintiff's claim, as it appears to focus on Gucci's purported violation of Howard's right to "refund . . . hold and convey her personal property[.]" *Id*. But it fails to specify what property Howard is referring to and fails to explain what was "discriminatory" about Gucci's practices.

Count I is dismissed with leave to amend to afford Howard an additional opportunity to state her § 1982 claim with sufficient clarity and specificity to apprise Gucci of the basis for this claim.

### C. Count III: Conversion

Howard's final claim alleges that Gucci committed the tort of conversion "when it wrongfully interfered with Ms. Howard's ownership and possession of her shoes[.]" ECF No. [1] ¶ 72. Gucci argues that this claim should be dismissed with prejudice because "a temporary loss of possession, without more, does not amount to conversion under Florida law." ECF No. [11] at 18-19. Howard responds that Dawn's possession of her shows amounts to conversion because that possession was "for an indefinite time." ECF No. [17] at 15.

Under Florida law, a conversion is "an unauthorized act which deprives another of his property permanently or for an indefinite time." *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001) (quotation omitted). "[T]o state a claim for conversion, one must allege facts

sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

Gucci relies primarily on *Archer v. City of Winter Haven*, 846 F. App'x 759 (11th Cir. 2021), for support that Howard's allegations do not state a claim for conversion. In *Archer*, the eponymous plaintiff purchased a television in a Wal-Mart store. *Id.* at 761. On his way out of the store, a Wal-Mart employee asked to see a receipt for the television, which Archer refused to provide. *Id.* Police arrived less than a minute later, but Archer still refused to produce a receipt, and he left the store without his television. *Id*. Wal-Mart subsequently verified that Archer had purchased the television and informed him that he could pick it up or receive a refund. *Id*. Archer filed suit instead, alleging, among other claims, conversion. The district court granted summary judgment to Wal-Mart and its employees. *Id.* at 761.

The Eleventh Circuit affirmed, reasoning that the "essence of conversion is not the possession of property . . . but possession in conjunction with a present intent on the part of the wrongdoer to deprive the person entitled to possession of the property[.]" *Id.* at 766 (*quoting Senfeld v. Bank of Nova Scotia Tr. Co. (Cayman)*, 450 So. 2d 1157, 1160–61 (Fla. 3d DCA 1984)). In *Archer*, the record showed that the Wal-Mart employees only intended to hold the television until they were able to confirm that Archer had purchased it. 846 F. App'x at 766. Archer's conversion claim failed because there was no evidence that any Wal-Mart employee "had the intent to deprive Archer of the television 'permanently or for an indefinite time.'" *Id*. at 767 (quoting *Fogade*, 263 F.3d at 1291).

Howard correctly notes that *Archer* was resolved at the summary judgment stage, rather than on a motion to dismiss. ECF No. [17] at 16. She also distinguishes *Archer* in that Archer was

explicitly told that he could take the television once he showed proof that he had purchased it. *Id.* Here, by contrast, the Complaint alleges that Dawn took possession of the shoes and refused to return them to Howard, despite her "begging for her shoes back." ECF No. [1] ¶ 175. Lastly, Howard argues that she sufficiently alleged that Dawn held her shoes for an "indefinite" period of time. ECF No. [17] at 18.

While *Archer* is distinguishable from the present case, the Court nevertheless reads *Archer* as strong support for the proposition that, for conversion to occur, the converter must have the intent to deprive the plaintiff of property "permanently or for an indefinite time." *Archer*, 846 F. App'x at 767 (quotation marks omitted). Here, there are no allegation that Gucci intended to deny Howard possession of the shoes permanently or indefinitely. Rather, the Complaint states that Dawn held the shoes "as a means to keep Ms. Howard in the store" prior to the police's arrival. ECF No. [1] ¶ 74. Implicitly then, Dawn did not intend to hold the shoes permanently or indefinitely, but rather for a definite period of time – until the police arrived. When the police arrived, she promptly returned the shoes. *Id.* The Court agrees with Gucci that, under *Archer* and the authority it relies upon, Dawn's temporary possession of the shoes does not amount to a claim of conversion.

Count III is dismissed with prejudice.

IV. **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Gucci's Motion, **ECF No. [11]**, is **GRANTED IN PART AND DENIED IN PART**.

2. Counts I and II of the Complaint, ECF No. [1], are **DISMISSED WITHOUT PREJUDICE.**

3. Count III is **DISMISSED WITH PREJUDICE**.

Case No. 23-cv-20886-BLOOM/Otazo-Reyes

4. Howard has leave to file an Amended Complaint **on or before June 14, 2023**.

5. Failure to file an Amended Complaint by the stated deadline will result in *sua sponte* dismissal of this case without further notice.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 1, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record